# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**　　　**2. PLEASE TYPE OR PRINT**　　　**3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| United States v. Reyes | EDNY | Margo K. Brodie |

| | Date the Order or Judgment Appealed from was Entered on the Docket: <br> January 10, 2024 | District Court Docket No.: <br> 21-cv-05578 |
|---|---|---|
| | Date the Notice of Appeal was Filed: <br> January 31, 2024 | Is this a Cross Appeal? <br> ☐ Yes　☑ No |

**Attorney(s) for Appellant(s):**
☐ Plaintiff
☑ Defendant

Counsel's Name:　Address:　Telephone No.:　Fax No.:　E-mail:

Jean-Claude Mazzola, of Mazzola Lindstrom LLP, 1350 Ave. of the Americas, 2d Floor New York, New York 10019,
(ph) 646-250-6666
(fax) 347-824-2006

**Attorney(s) for Appellee(s):**
☑ Plaintiff
☐ Defendant

Counsel's Name:　Address:　Telephone No.:　Fax No.:　E-mail:

Philip L Bednar, US DOJ, Tax Division, P.O. Box 55, Washington DC 20044
(ph) 202-307-6415
(fax) 202-514-5238
Philip.L.Bednar@usdoj.gov

| Has Transcript Been Prepared? <br> N/A | Approx. Number of Transcript Pages: <br> N/A | Number of Exhibits Appended to Transcript: <br> N/A | Has this matter been before this Circuit previously? ☐ Yes ☑ No <br><br> If Yes, provide the following: <br><br> Case Name: <br><br> 2d Cir. Docket No.:　　Reporter Citation: (i.e., F.3d or Fed. App.) |
|---|---|---|---|

***ADDENDUM "A":*** *COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.*

***ADDENDUM "B":*** *COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.*

## PART A: JURISDICTION

| 1. Federal Jurisdiction | 2. Appellate Jurisdiction |
|---|---|
| ☑ U.S. a party　　☐ Diversity | ☑ Final Decision　　☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| ☐ Federal question (U.S. not a party)　　☐ Other (specify): _____ | ☐ Interlocutory Decision Appealable As of Right　　☐ Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

**PART B:  DISTRICT  COURT DISPOSITION   (Check as many as apply)**

| 1. Stage of Proceedings | 2. Type of Judgment/Order Appealed | 3. Relief |
|---|---|---|
| ☑ Pre-trial<br>☐ During trial<br>☐ After trial | ☐ Default judgment ☐ Dismissal/other jurisdiction<br>☐ Dismissal/FRCP 12(b)(1) ☐ Dismissal/merit<br>   lack of subject matter juris. ☐ Judgment / Decision of the Court<br>☐ Dismissal/FRCP 12(b)(6) ☑ Summary judgment<br>   failure to state a claim ☐ Declaratory judgment<br>☐ Dismissal/28 U.S.C. § 1915(e)(2) ☐ Jury verdict<br>   frivolous complaint ☐ Judgment NOV<br>☐ Dismissal/28 U.S.C. § 1915(e)(2) ☐ Directed verdict<br>   other dismissal ☐ Other (specify): | ☑ Damages:       ☐ Injunctions:<br><br>☑ Sought: $ 943,000 ☐ Preliminary<br>☐ Granted: $ *** ☐ Permanent<br>☐ Denied: $ _____ ☐ Denied<br><br>*** Final number has not been determined, and remains sub judice. |

**PART C:  NATURE OF SUIT   (Check as many as apply)**

| 1. Federal Statutes | | 2. Torts | 3. Contracts | 4. Prisoner Petitions |
|---|---|---|---|---|
| ☐ Antitrust<br>☐ Bankruptcy<br>☐ Banks/Banking<br>☐ Civil Rights<br>☐ Commerce<br>☐ Energy<br>☐ Commodities<br>☐ Other (specify): _____ | ☐ Communications<br>☐ Consumer Protection<br>☐ Copyright ☐ Patent<br>☐ Trademark<br>☐ Election<br>☐ Soc. Security<br>☐ Environmental | ☐ Freedom of Information Act<br>☐ Immigration<br>☐ Labor<br>☐ OSHA<br>☐ Securities<br>☑ Tax | ☐ Admiralty/<br>  Maritime<br>☐ Assault /<br>  Defamation<br>☐ FELA<br>☐ Products Liability<br>☐ Other (Specify): | ☐ Admiralty/<br>  Maritime<br>☐ Arbitration<br>☐ Commercial<br>☐ Employment<br>☐ Insurance<br>☐ Negotiable<br>  Instruments<br>☐ Other Specify |

(col 4: ☐ Civil Rights ☐ Habeas Corpus ☐ Mandamus ☐ Parole ☐ Vacate Sentence ☐ Other)

| 5. Other | 6. General | 7. Will appeal raise constitutional issue(s)? |
|---|---|---|
| ☐ Hague Int'l Child Custody Conv.<br>☐ Forfeiture/Penalty<br>☐ Real Property<br>☐ Treaty (specify): _____<br>☐ Other (specify): _____ | ☐ Arbitration<br>☐ Attorney Disqualification<br>☐ Class Action<br>☐ Counsel Fees<br>☐ Shareholder Derivative<br>☐ Transfer | ☑ Yes   ☐ No<br><br>Will appeal raise a matter of first impression?<br><br>☐ Yes   ☑ No |

1.  Is any matter relative to this appeal still pending below? ☑ Yes, specify:   Interest and penalty calculations   ☐ No

2.  To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

    (A)   Arises from substantially the same case or controversy as this appeal?    ☐ Yes   ☑ No

    (B)   Involves an issue that is substantially similar or related to an issue in this appeal?    ☐ Yes   ☑ No

If yes, state whether ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name: | Docket No. | Citation: | Court or Agency: |
|---|---|---|---|
| | | | |

Name of Appellant:  Catherine Reyes and Juan Reyes

| Date: March 15, 2024 | Signature of Counsel of Record:  /s/ Jean-Claude Mazzola |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

        **PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C**  (Rev. December 2016)

**Addendum A to Form C**

**Nature of Case**

The government brought suit against defendants Catherine and Juan Reyes on October 7, 2021, pursuant to 31 U.S.C. §§ 3711(g)(4)(C) and 5321(a)(5) to collect civil penalties it alleges that the defendants owe due to a willful failure to timely file "FBAR" forms (i.e., Report of Foreign Bank and Financial Accounts), with their tax returns in 2010 to 2012. The District Court granted summary judgment against the defendants, inferring that their failures to file the FBAR forms in those years was willful, and assessed approximately $1 million in penalties, inclusive of interest, due to such alleged failures. Both defendatns testified, and reaffirmed by affidavit, that they believed that they were not required to report the existence of their foreign bank account and thus did not willfully violate the law. The defendants argued below that the issue of willfulness should have been left for the jury. The District Court found that the defendants were reckless in not submitting the FBAR forms in 2010-2012, and that such recklessness made the issue of willfulness unrebutted.

**Addendum B to Form C**

**Statement of Issues to be Raised on Appeal and Standard of Review**

Appellants Catherine Reyes and Juan Reyes expect to raise on appeal the following issues:

1.      Whether the district court erred in finding that there was no genuine issue of material fact as to whether defendants Catherine and Juan Reyes had willfully violated the requirement that they file FBAR forms with their tax returns, which forms would have disclosed to the IRS moneys contained in a foreign bank account that had been gifted to them by Juan Reyes's parents, domiciliaries of Nicaragua, who had created the account in order to keep the funds from being seized by the government after the communists had seized power? The Reyeses demonstrated below that they had not acted willfully in not disclosing this account to the IRS. The court erred in taking from the jury the issue of fact as to whether they acted "willfully" in violation of the FBAR reporting requirement.

This is issue is subject to the de novo standard of review.

2.      Whether the penalty is so severe in comparison to any claimed wrongdoing or culpability as to violate the Eighth Amendment's bar on excessive fines? The Reyeses maintain that the civil penalty imposed does is violative of the Eighth Amendment. See *Alexander v. United States*, 509 U. S. 544 (1993); *Austin v. United States*, 509 U. S. 602 (1993).

This is issue is subject to the de novo standard of review.

3.      Whether the penalty imposed is so severe in comparison to any claimed wrongdoing or culpability, and in comparison to any damages that the government actually sustained, as to implicate higher due process rights, pursuant to such analogous case law as *International Union v. Bagwell*, 512 U.S. 821 (1994); and *Mackler Productions, Inc. v. Cohen*, 225 F. 3d 136 (2d Cir. 2000).

This is issue is subject to the de novo standard of review.

4.      Whether, by adding the word "willful" to 31 U.S.C. § 5321, Congress intended to hold accountable for FBAR violations only those persons who committed truly intentional acts. The appellants maintain that including "willful" in the statute reflects Congress's intent that the penalty be reserved for intentional conduct, or else it need not have included the term in the first place. See *United States v. Granda*, 565 F.2d 922 (5th Cir. 1978). The Reyeses will argue on appeal that FBAR violations were not meant to be strict-liability offenses.

This is issue is subject to the de novo standard of review.

APPEAL,ACO

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:21-cv-05578-MKB-PK

United States of America v. Reyes et al
Assigned to: Chief Judge Margo K. Brodie
Referred to: Magistrate Judge Peggy Kuo
Demand: $943,000
Cause: 28:1345 USA Plaintiff

Date Filed: 10/07/2021
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: U.S. Government Plaintiff

**Plaintiff**

**United States of America**     represented by   **Julia Glen**
DOJ-Tax
Tax Division
P.O. Box 55 Ben Franklin Station
Washington, DC 20044
202-514-6484
Fax: 202-514-5238
Email: julia.m.glen@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Philip Leonard Bednar**
DOJ-Tax
P.O. Box 55
Washington, DC 20044
202-307-6415
Fax: 202-514-5238
Email: philip.l.bednar@usdoj.gov
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Juan Reyes**     represented by   **Richard E. Lerner**
Mazzola Lindstrom, LLP
Mazzola Lindstrom, LLP
1350 Avenue of the Americas, 2nd Floor
New York, NY 10019
917-584-4864
Email: richard@mazzolalindstrom.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Catherine Reyes**     represented by   **Richard E. Lerner**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/07/2021 | 1 | COMPLAINT against All Defendants Was the Disclosure Statement on Civil Cover Sheet completed -YES,, filed by United States of America. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons Juan Reyes, # 3 Proposed Summons Catherine Reyes) (Bednar, Philip) (Entered: 10/07/2021) |
| 10/07/2021 | | Case Assigned to Chief Judge Margo K. Brodie and Magistrate Judge Roanne L. Mann. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Davis, Kimberly) (Entered: 10/07/2021) |
| 10/07/2021 | 2 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences**. Do NOT return or file the consent unless all parties have signed the consent. (Davis, Kimberly) (Entered: 10/07/2021) |
| 10/07/2021 | 3 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (Davis, Kimberly) (Entered: 10/07/2021) |
| 10/07/2021 | 4 | Summons Issued as to Catherine Reyes, Juan Reyes. (Attachments: # 1 Summons) (Davis, Kimberly) (Entered: 10/07/2021) |
| 11/04/2021 | 5 | WAIVER OF SERVICE Returned Executed by Catherine Reyes, Juan Reyes. Catherine Reyes waiver sent on 11/4/2021, answer due 1/3/2022; Juan Reyes waiver sent on 11/4/2021, answer due 1/3/2022. (Lerner, Richard) (Entered: 11/04/2021) |
| 01/10/2022 | 6 | First MOTION for Extension of Time to File Answer re 1 Complaint, *ON CONSENT* by Catherine Reyes, Juan Reyes. (Lerner, Richard) (Entered: 01/10/2022) |
| 01/10/2022 | | ORDER Application granted, on consent. 6 Motion for Extension of Time to Answer re 6 First MOTION for Extension of Time to File Answer re 1 Complaint, *ON CONSENT* All Defendants. Ordered by Magistrate Judge Roanne L. Mann on 1/10/2022. (LK) (Entered: 01/10/2022) |
| 02/07/2022 | 7 | Second MOTION for Extension of Time to File Answer *ON CONSENT* by Catherine Reyes, Juan Reyes. (Lerner, Richard) (Entered: 02/07/2022) |
| 02/07/2022 | | ORDER 7 Motion for Extension of Time to Answer re 7 Second MOTION for Extension of Time to File Answer *ON CONSENT* All Defendants. The Court grants the request for a *nunc pro tunc* extension, on consent, and extends its sympathies to defense counsel. Ordered by Magistrate Judge Roanne L. Mann on 2/7/2022. (LK) (Entered: 02/07/2022) |
| 03/04/2022 | 8 | ANSWER to 1 Complaint, by Catherine Reyes, Juan Reyes. (Lerner, Richard) (Entered: 03/04/2022) |
| 03/07/2022 | 9 | SCHEDULING ORDER: A telephonic initial conference will be held on **April 7, 2022 @ 11:30 a.m.** before Magistrate Judge Roanne L. Mann. SEE ATTACHED: ORDER, INITIAL CONFERENCE QUESTIONNAIRE, AND MANDATORY REQUIREMENTS FOR CONFERENCE. |

| | | Counsel are directed to confer to jointly fill out and docket the attached questionnaire by 2:00 p.m. on **April 5, 2022**.<br><br>*** To dial in to the initial conference, the parties are directed to call (877) 336-1839 and type in the access code 6672833.<br><br>If the parties are initially unable to connect to the call, please try again as the third-party conference call system has been overloaded at times. Ordered by Magistrate Judge Roanne L. Mann on 3/7/2022. (LK) (Entered: 03/07/2022) |
|---|---|---|
| 04/01/2022 | 10 | REPORT of Rule 26(f) Planning Meeting (Bednar, Philip) (Entered: 04/01/2022) |
| 04/05/2022 | 11 | NOTICE of Appearance by Julia Glen on behalf of United States of America (aty to be noticed) (Glen, Julia) (Entered: 04/05/2022) |
| 04/07/2022 | 12 | Minute Entry for Initial Conference Hearing held before Magistrate Judge Roanne L. Mann on 4/7/2022. The Court conducts a telephonic initial conference. Fact discovery must be completed by December 15, 2022. Pleadings may be amended as of right by July 6, 2022. Requests for a premotion conference are due by January 13, 2023. The Court defers setting an expert discovery schedule. By July 7, 2022, the parties must file a joint status report as a letter motion requesting that the discovery schedule be held in abeyance (in the event the parties have agreed to settle the case) or indicating the need for further or extended discovery deadlines. See attached. (Proujansky, Josh) (Main Document 12 replaced on 4/7/2022) (Proujansky, Josh). (Entered: 04/07/2022) |
| 07/01/2022 | 13 | Letter MOTION for Extension of Time to Complete Discovery *(no change to fact discovery deadline needed at this time)* by United States of America. (Bednar, Philip) (Entered: 07/01/2022) |
| 07/05/2022 | | ORDER terminating, as moot 13 Motion for Extension of Time to Complete Discovery. Ordered by Magistrate Judge Roanne L. Mann on 7/5/2022. (LK) (Entered: 07/05/2022) |
| 07/14/2022 | | ORDER The parties have ignored the Court's directive of April 7, 2022 (DE #12), which set a deadline of July 7, 2022, by which the parties were directed to request either a settlement conference or a referral to court-annexed mediation, or to notify the Court that they had agreed in principle to settle the case. They are directed to cure that omission by **July 18, 2022**. Ordered by Magistrate Judge Roanne L. Mann on 7/14/2022. (LK) (Entered: 07/14/2022) |
| 07/18/2022 | 14 | Letter MOTION for Hearing re Order,, *(Requesting Status Conference and Settlement Conference)* by United States of America. (Glen, Julia) (Entered: 07/18/2022) |
| 07/19/2022 | | ORDER granting 14 Motion for Hearing. The Court grants the parties' joint application to the following extent: By **September 30, 2022**, the parties shall file a joint letter-motion advising the Court of the approximate time period during which they would like to participate in a settlement conference and providing an updated status report. Ordered by Magistrate Judge Roanne L. Mann on 7/19/2022. (LK) (Entered: 07/19/2022) |
| 09/30/2022 | 15 | Letter MOTION for Discovery *(providing status report and advising on dates for conducting settlement conference)* by United States of America. (Bednar, Philip) (Entered: 09/30/2022) |
| 10/04/2022 | | ORDER DE# 15 Motion for Discovery. Is denied without prejudice. In lieu of scheduling a settlement conference for early next year, the Court encourages the parties to continue their settlement discussions; they are directed to file, by **December 16, 2022**, a joint updated status report and, if they have not agreed to settle the case, they may renew their request for a settlement conference. Ordered by Magistrate Judge Roanne L. Mann on 10/4/2022. (LK) (Entered: 10/04/2022) |

3/15/24, 3:16 PM

Case: 24-286, 03/18/2024, DktEntry: 27.1, Page 8 of 29
Eastern District of New York - LIVE Database 1.7 (Revision 1.7.1.2)

| 12/16/2022 | 16 | STATUS REPORT *Joint Updated Status Report Filed Pursuant to Docket Order Dated October 4, 2022* by United States of America (Glen, Julia) (Entered: 12/16/2022) |
| --- | --- | --- |
| 12/16/2022 | | ORDER re 16 Status Report. This is to confirm that requests for a premotion conference are due by January 13, 2023. Ordered by Magistrate Judge Roanne L. Mann on 12/16/2022. (NE) (Entered: 12/16/2022) |
| 01/09/2023 | | Case Reassigned to Magistrate Judge Peggy Kuo. Magistrate Judge Roanne L. Mann no longer assigned to the case. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (JT) (Entered: 01/09/2023) |
| 01/13/2023 | 17 | Letter MOTION for pre motion conference *regarding anticipated motion for summary judgment* by United States of America. (Bednar, Philip) (Entered: 01/13/2023) |
| 01/18/2023 | 18 | MOTION for pre motion conference re 17 Letter MOTION for pre motion conference *regarding anticipated motion for summary judgment REQUEST FOR ISSUANCE OF SCHEDULING ORDER IN LIEU OF PRE-MOTION CONFERENCE (ON CONSENT)* by Catherine Reyes, Juan Reyes. (Lerner, Richard) (Entered: 01/18/2023) |
| 01/19/2023 | | SCHEDULING ORDER: The Court adopts the parties' proposed briefing schedule for Plaintiff's anticipated summary judgment motion. Plaintiff shall serve its motion on or before February 28, 2023; Defendants shall serve their opposition on or before March 28, 2023; and Plaintiff shall serve its reply, if any, and file its fully briefed motion on or before April 18, 2023. Ordered by Chief Judge Margo K. Brodie on 1/19/2023. (TD) (Entered: 01/19/2023) |
| 02/28/2023 | 19 | Letter *Confirming Service of Plaintiff United States of America's Summary Judgment Motion Papers* by United States of America (Bednar, Philip) (Entered: 02/28/2023) |
| 03/15/2023 | 20 | First MOTION for Extension of Time to File Response/Reply *to government's motion for summary judgment* by Catherine Reyes, Juan Reyes. (Lerner, Richard) (Entered: 03/15/2023) |
| 03/31/2023 | | ORDER granting 20 Motion for Extension of Time. Defendants shall serve their opposition on or before April 11, 2023; and Plaintiff shall serve its reply, if any, and file its fully briefed motion on or before May 2, 2023. Ordered by Chief Judge Margo K. Brodie on 3/31/2023. (TD) (Entered: 03/31/2023) |
| 04/11/2023 | 21 | NOTICE by Catherine Reyes, Juan Reyes *letter notice confirming service upon government of defendants' opposition to government's motion for summary judgment* (Lerner, Richard) (Entered: 04/11/2023) |
| 05/02/2023 | 22 | MOTION for Summary Judgment *(fully briefed)* by United States of America. (Attachments: # 1 Notice of Motion, # 2 Rule 56.1 Statement, # 3 Affidavit Cox. Decl., # 4 Affidavit Glen Decl., # 5 Affidavit Nguyen Decl., # 6 Proposed Judgment, # 7 Exhibit A - 1st set of interrogatories, # 8 Exhibit B - responses to interrogatories, # 9 Exhibit C - J. Reyes depo transcript, # 10 Exhibit D - C. Reyes depo transcript, # 11 Exhibit E - joint account agreement, # 12 Exhibit F - application for opening account, # 13 Exhibit G - account components statement, # 14 Exhibit H - signature card, # 15 Exhibit I - keep mail instructions, # 16 Exhibit J - Jan. 2012 Lloyds stmt, # 17 Exhibit K - divest securities, # 18 Exhibit L - Maestro card application, # 19 Exhibit M - Eurocard statements, # 20 Exhibit N - Yoskowitz letter, # 21 Exhibit O - 2010 original return, # 22 Exhibit P - 2011 original return, # 23 Exhibit Q - 2012 original return, # 24 Exhibit R - 2010 Form 1040X, # 25 Exhibit S - 2011 Forom 1040X, # 26 Exhibit T - 2012 Form 1040X, # 27 Exhibit U - Mar. 4 2014 offshore disc. letter, # 28 Exhibit V - FBARs 2010-2012, # 29 Exhibit W - Statute extension consent (JR), # 30 Exhibit X - Statute extension consent (CR), # 31 Exhibit Y - 10/18/17 IRS letter, # 32 Exhibit Z - Lead Sheet (JR), # 33 Exhibit AA - Lead Sheet (CR), |

| | | |
|---|---|---|
| | | # [34](#) Exhibit BB - Willful penalty calculation (JR), # [35](#) Exhibit CC - Willful penalty calculation (CR), # [36](#) Exhibit DD - Letter 3709 (JR), # [37](#) Exhibit EE - Letter 3709 (CR), # [38](#) Exhibit FF - penalty assessment cert (JR), # [39](#) Exhibit GG - penalty assessment cert (CR), # [40](#) Exhibit HH - Letter 3708 (JR), # [41](#) Exhibit II - Letter 3708 (CR), # [42](#) Exhibit JJ - Formo 13449 (JR), # [43](#) Exhibit KK - Form 13449 (CR), # [44](#) Exhibit LL - business records decl., # [45](#) Memorandum in Opposition Defendants' opposition brief, # [46](#) Affidavit in Opposition Attorney Affirmation, # [47](#) Affidavit in Opposition Juan Reyes Decl., # [48](#) Affidavit Catherine Reyes Decl., # [49](#) Memorandum in Support USA Reply Brief, # [50](#) Affidavit Nguyen Decl. for reply, # [51](#) Exhibit A - 2010 return, # [52](#) Exhibit B - 2011 return, # [53](#) Exhibit C - 2012 return) (Bednar, Philip) (Entered: 05/02/2023) |
| 05/02/2023 | [23](#) | Letter *Regarding Courtesy Copy of Summary Judgment Motion Papers* by United States of America (Bednar, Philip) (Entered: 05/02/2023) |
| 05/03/2023 | [24](#) | RESPONSE in Opposition re [22](#) MOTION for Summary Judgment *(fully briefed)* filed by Catherine Reyes, Juan Reyes. (Attachments: # [1](#) Memorandum in Opposition to motion for summary judgment, # [2](#) Declaration of Juan Reyes in opposition to motion for summary judgment, # [3](#) Declaration of Catherine Reyes in opposition to motion for summary judgment) (Lerner, Richard) (Entered: 05/03/2023) |
| 01/10/2024 | [25](#) | MEMORANDUM & ORDER, the Court grants the government's motion [22](#) for summary judgment. So ordered by Chief Judge Margo K. Brodie on 1/10/2024. (JP) (Entered: 01/10/2024) |
| 01/23/2024 | | Civil Case Terminated. (WV) (Entered: 01/23/2024) |
| 01/24/2024 | [26](#) | Letter MOTION to Reopen Case *and Enter Judgment Following Court's Decision on Summary Judgment* by United States of America. (Attachments: # [1](#) Proposed Judgment) (Bednar, Philip) (Entered: 01/24/2024) |
| 01/25/2024 | | ORDER re [26](#) Motion to Reopen Case and Enter Judgment. The Court directs Defendants to respond to the government's motion on or before February 5, 2024, regarding whether the Court should include in the judgment (1) post-judgment interest and (2) pre-judgment interest and late penalties accruing after February 21, 2023. Ordered by Chief Judge Margo K. Brodie on 1/25/2024. (WV) (Entered: 01/25/2024) |
| 01/31/2024 | [27](#) | NOTICE OF APPEAL as to [25](#) Order on Motion for Summary Judgment by Catherine Reyes, Juan Reyes. Filing fee $ 605, receipt number ANYEDC-17521422. (Lerner, Richard) (Entered: 01/31/2024) |
| 01/31/2024 | | Electronic Index to Record on Appeal sent to US Court of Appeals. [27](#) Notice of Appeal Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 01/31/2024) |
| 02/05/2024 | [28](#) | First MOTION for Extension of Time to File *response to request for defendants' position regarding interest calculations* by Catherine Reyes, Juan Reyes. (Lerner, Richard) (Entered: 02/05/2024) |
| 02/06/2024 | [29](#) | REPLY in Opposition *to the government's request for 6% penalty, per letter application of Jan. 25, 2024* filed by Catherine Reyes, Juan Reyes. (Lerner, Richard) (Entered: 02/06/2024) |
| 02/07/2024 | | ORDER re [29](#) Defendants' opposition to [26](#) Motion to Reopen Case and Enter Judgment. The Court directs the government to reply to [29](#) Defendants' opposition on or before February 14, 2024. Ordered by Judge Margo K. Brodie on 2/7/2024. (JYD) (Entered: 02/07/2024) |

| 02/14/2024 | [30](#) | REPLY to Response to Motion re [28](#) First MOTION for Extension of Time to File *response to request for defendants' position regarding interest calculations* filed by United States of America. (Bednar, Philip) (Entered: 02/14/2024) |
| 02/22/2024 | [31](#) | REPLY in Opposition re [30](#) Reply to Response to Motion filed by Catherine Reyes, Juan Reyes. (Lerner, Richard) (Entered: 02/22/2024) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 03/15/2024 15:15:52 | | |
| **PACER Login:** | RichardLerner | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-05578-MKB-PK |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

### Case No. 21-cv-05578

-------------------------------------------------------x

UNITED STATES OF AMERICA,

Plaintiff,

-against-

JUAN REYES and CATHERINE REYES,

Defendants.

-------------------------------------------------------x

# Notice of Appeal

Notice is hereby given that defendants Juan Reyes and Catherine Reyes hereby appeal to

the United States Court of Appeals for the Second Circuit from each and every aspect of the

January 10, 2024 order herein (ECF 25) granting summary judgment against them.

Dated:  New York, New York
　　　　January 31, 2024

**MAZZOLA LINDSTROM LLP**

Richard E. Lerner
*Counsel for defendants Juan Reyes and Catherine*
1350 Avenue of the Americas, Second Floor
New York, New York 10019
917-584-4864
646.216.8300
richard@mazzolalindstrom.com

**Service Via ECF**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

UNITED STATES OF AMERICA,

                Plaintiff,

        v.

JUAN REYES and CATHERINE REYES,

                Defendants.

-----------------------------------------------------------------

                                            **MEMORANDUM & ORDER**
                                            21-CV-5578 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiff the United States of America commenced the above-captioned action against

Defendants Dr. Juan Reyes and Catherine Reyes on October 7, 2021.  (Compl., Docket Entry

No. 1.)  The government asserts claims pursuant to 31 U.S.C. §§ 3711(g)(4)(C) and 5321(a)(5) to

collect outstanding civil penalties it alleges Defendants owe due to their failure to timely file a

Report of Foreign Bank and Financial Accounts ("FBAR") to report their financial interest in a

jointly-held foreign financial account from 2010 to 2012.  (Compl. ¶¶ 7–9, 16, 32.)

      The government moves for summary judgment, pursuant to Rule 56 of the Federal Rules

of Civil Procedure, as to its claims against both Defendants.[1]  For the reasons set forth below, the

Court grants the government's motion for summary judgment.

---

[1] (Gov't Not. of Mot. for Summ. J. ("Gov't Mot."), Docket Entry No. 22-1; Gov't Mem. of Law in Supp. of Gov't Mot. ("Gov't Mem."), Docket Entry No. 22; Gov't Reply Mem. in Supp. of Gov't Mot. ("Gov't Reply Mem."), Docket Entry No. 22-49; Defs.' Mem. of Law in Opp'n to Gov't Mot. ("Defs.' Mem."), Docket Entry No. 24-1.)

### I.  Background

#### a.  Factual background

The following facts are undisputed unless otherwise noted.[2]

##### i.  The Lloyds Account

Defendants are United States citizens. (Gov't 56.1 ¶¶ 1–2.)  In or around 1972, Juan's[3]

parents opened a bank account in his name in Nicaragua at Banco de Londres y America del Sur

("Banco de Londres").  (*Id.* ¶ 9.)  Juan's parents provided the initial funds to start the bank

account, which totaled approximately $200,000.  (*Id.*)  Banco de Londres became part of Lloyds

Bank, and on or about April 19, 1994, Defendants established the account as a joint account at

Lloyds Bank PLC in the United Kingdom.  (*Id.* ¶ 10.)  Defendants later moved the account to

Lloyds TSB Bank in Switzerland ("the Lloyds Account"), which is where the account was held

during the period of 2010 to 2012.  (*Id.*)  The Lloyds Account was comprised of three

components: (1) a cash account; (2) money market instruments and money market funds; and

(3) securities.  (*Id.* ¶ 11.)

Defendants both had signatory authority over the Lloyds Account from its creation as a

joint account in 1994 until it was closed in 2013.  (*Id.* ¶ 12.)  Defendants directed the bank and

paid it a fee to retain all account related correspondence, or "keep mail," rather than having it

sent to Defendants at their designated address in the United States, and also directed at least once

that the bank send Catherine's credit card statements associated with the account to a family

friend's address in Madrid.  (Gov't Ex. I, Docket No. 22-15; Gov't 56.1 ¶¶ 14, 22.)  A document

---

[2]  The Court relies on the parties' statements of undisputed material facts.  (Gov't Rule 56.1 Stmt. of Undisputed Material Facts ("Gov't 56.1"), Docket Entry No. 22-2; Defs.' Resp. to Gov't Rule 56.1 Stmt. of Undisputed Material Facts ("Defs.' 56.1 Resp."), Docket Entry No. 24.)

[3]  For ease of reference, the Court will refer to the parties by their given names.

2

from August of 2000 signed by Defendants directed Lloyds Bank to divest their U.S. securities. (Gov't 56.1 ¶ 17; Gov't Ex. K, Docket Entry No. 22-17.)

### ii.   Preparation of Defendants' joint federal income tax returns

Sidney Yoskowitz, Defendants' accountant, prepared and filed their original 2010, 2011, and 2012 federal income tax returns. (Gov't 56.1 ¶ 23.) Defendants worked with Yoskowitz for approximately forty years before his retirement. (*Id.* ¶ 24.) Yoskowitz's routine practice during the years he worked for Defendants was to send what he referred to as a "client organizer" to his clients every year to assist him in preparing their federal income tax returns. (*Id.* ¶ 25.) In the client organizer, Yoskowitz asked his clients, among other questions, if they had any foreign income. (*Id.* ¶ 25.) Defendants never returned the client organizer, but instead provided 1099 forms. (*Id.*)

Defendants did not disclose the existence of the Lloyds Account to Yoskowitz when he prepared their original income tax returns for the tax years 2010, 2011, and 2012. (*Id.* ¶ 27.) Defendants did not provide Yoskowitz with any information about the Lloyds Account because, according to Juan, it was "not income in the United States" and Defendants "didn't feel the obligation that we have to this country with this account." *Id.*

According to the government, after Yoskowitz prepared Defendants' 2010, 2011, and 2012 income tax returns, Defendants signed and returned them to Yoskowitz for filing with the IRS. (*Id.* ¶¶ 28 29.) Defendants contend that they did not review the 2010, 2011, and 2012 joint federal income tax returns for accuracy or sign them after Yoskowitz prepared them. (*Id.* ¶ 29; Defs.' 56.1 ¶ 28–29.) Defendants' joint federal income tax returns for the tax years 2010, 2011, and 2012 failed to disclose the existence of the Lloyds Account. (Gov't 56.1 ¶¶ 31–32; Gov't Exs. O, Docket Entry No. 22-21, P, Docket Entry No. 22-22, and Q, Docket Entry No. 22-23.)

3

On Schedule B of their originally filed joint federal income tax returns for 2010, 2011, and 2012,

the "no" box was checked in response to the question of whether Defendants had an interest in or

a signature or other authority over a financial account (including bank accounts, securities

account, or other financial account) in a foreign country. (*Id.* ¶ 32; Gov't Exs. O, P, Q.)

Defendants failed to timely file an FBAR for the Lloyds Account for each of the tax years 2010,

2011, and 2012. (*Id.* ¶ 34.)

### iii.   Defendants' amended income tax returns and the Offshore Voluntary Disclosure Program

Defendants closed the account at the end of 2013 or early 2014, transferring all of the

funds in the account to a J.P. Morgan Chase bank account in the United States. (*Id.* ¶ 15.)

Defendants did not consult with any professional advisor, accountant (including Yoskowitz), or

other advisor regarding the U.S. tax implications or reporting requirements for the Lloyds

Account until late 2013, when Defendants consulted with an attorney in conjunction with the

closing of the Lloyds Account and moving the funds to the United States. (*Id.* ¶ 35.) Juan

testified during his deposition that he did not report the Lloyds Account because he believed that

if you were a citizen of another country, and the money was generated in that country, then the

United States did not have jurisdiction over the foreign account. (*Id.* ¶ 36.) His belief was based

on a newspaper article written by an individual named "Robert Malta Grossman," once published

in a Nicaraguan newspaper, and on conversations with individuals he identified as "international

lawyers." (*Id.*)

Yoskowitz learned about Defendants' foreign income and the existence of the Lloyds

Account in 2014 when Defendants' attorney asked Yoskowitz to prepare amended federal

income tax returns for income tax years 2005 to 2014. (*Id.* ¶ 30.) The amended income tax

returns for 2010, 2011, and 2012 disclosed the existence of, and interest income from, the Lloyds Account. (*Id.* ¶ 39.)

In 2014, Defendants sought to participate in the Department of Treasury's Offshore Voluntary Disclosure Program ("OVDP") for tax years 2005 to 2012. (*Id.* ¶ 40.) On March 4, 2014, as part of OVDP, Defendants submitted Offshore Voluntary Disclosures to the IRS, disclosing the existence of the Lloyds Account from 2005 to 2012. (*Id.* ¶ 42.) Defendants admitted the account had a balance of between $1,000,000 and $2,500,000 from 2005 to 2012 and estimated the income the account made for those years was between $0 and $100,000. (*Id.*) As part of their participation in OVDP, in October of 2014, Defendants filed delinquent FBARs with amended income tax returns for 2010 to 2012. (*Id.* ¶ 43.) Defendants eventually withdrew from OVDP in October of 2016. (*Id.* ¶ 44.)

### iv.   The government's assessment of Defendants' FBAR violation penalties

Defendants consented to extend the time for the IRS to assess civil penalties under 31 U.S.C. § 5321 for the FBAR violations. (*Id.* ¶ 45.) Upon their withdrawal from OVDP, the IRS examined whether Defendants had willfully violated the requirement to file FBARs for 2010, 2011, and 2012. (*Id.* ¶ 46.) The IRS determined that Defendants willfully failed to timely report on an FBAR their financial interest in the Lloyds Account by the deadline for tax years 2010, 2011, and 2012. (*Id.* ¶ 47.)

In 2010, 2011, and 2012, the Lloyds Account had the following balances as of June 30 of the following year, respectively: $2,113,813, $2,064,258, and $2,101,330. (*Id.* ¶ 49.) Initially, the government determined that for tax years 2010 to 2012 the total willful FBAR penalty pursuant to the statutory maximum under 31 U.S.C. §§ 5321(a)(5)(C) and (D) for Defendants was $3,139,701 each. Using its discretion, the government determined that Defendants qualified

5

for mitigation. The government decided that appropriate FBAR penalties were $172,022 for

2010, $172,022 for 2011, and $172,021 for 2012 for each Defendant. These amounts were

calculated by multiplying the June 30, 2012 account balance of $2,064,258 by 50%, then

multiplying the resulting amount of $1,032,129 by 50% to account for each spouse's one-half

ownership in the account, and then spreading the resulting amount of $516,065 evenly across

years 2010, 2011, and 2012. (*Id.* ¶ 50.)

     After Defendants submitted a formal protest and the IRS conducted an additional review,

the IRS ultimately determined that an additional 20% discount would be appropriate. (*Id.* ¶ 51.)

Thus, the assessments for FBAR penalties for each Defendant's failure to report the Lloyds

Account were as follows: $140,017 for 2010, $140,017 for 2011, and $140,017 for 2012, totaling

$420,051 each. (*Id.*) On October 9, 2019, Defendants each signed an IRS Form 13449,

Agreement to Assessment and Collection of Penalties under 31 U.S.C. §§ 5321(a)(5) and

5321(a)(6), in which they each consented to the immediate assessment and collection of FBAR

penalties totaling $420,051. (*Id.* ¶ 52.) On or about October 22, 2019, a delegate of the

Secretary of the Treasury sent Defendants notice of the assessments of these FBAR penalties and

demanded payment. (*Id.* ¶ 54.) As of February 21, 2023, the unpaid balance on the FBAR

assessments for Defendants for 2010, 2011, and 2012, including failure to pay penalties, interest,

and other statutory accruals under 31 U.S.C. § 3717, was $518,170.30 each. (*Id.* ¶¶ 55–56.)

### b. Procedural background

     The government filed the Complaint on October 7, 2021, alleging that Defendants

willfully failed to file an FBAR to timely report their financial interest in a jointly-held foreign

financial account for the tax years 2010, 2011, and 2012. (Compl. ¶¶ 7 9, 16, 32.) The

government seeks statutory penalties and associated penalties and interest from each Defendant.

(Compl. at 8.)  On March 4, 2022, Defendants filed an answer to the Complaint.  (Answer,

Docket Entry No. 8.)  On May 2, 2023, the government moved for summary judgment.  (Gov't

Mot.)

## II.  Discussion

### a.  Standard of review

Summary judgment is proper only when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Radwan v.*

*Manuel*, 55 F.4th 101, 113 (2d Cir. 2022) (quoting Fed. R. Civ. P. 56(a)).  The court must

"constru[e] the evidence in the light most favorable to the nonmoving party," *Radwan*, 55 F.4th

at 113 (alteration in original) (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir.

2011)), and "resolve all ambiguities and draw all permissible factual inferences in favor of the

party against whom summary judgment is sought," *Koral v. Saunders*, 36 F.4th 400, 408 (2d Cir.

2022) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  The role of the court "is not

to resolve disputed questions of fact but only to determine whether, as to any material issue, a

genuine factual dispute exists."  *Kee v. City of New York*, 12 F.4th 150, 167 (2d Cir. 2021)

(quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)).  A genuine issue of fact

exists when there is sufficient "evidence on which the jury could reasonably find for the

[nonmoving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The "mere

existence of a scintilla of evidence" is not sufficient to defeat summary judgment.  *Id.*  The

court's function is to decide whether, "after resolving all ambiguities and drawing all inferences

in favor of the nonmovant, a reasonable jury could return a verdict for the nonmovant."  *Miller v.*

*N.Y. State Police*, No. 20-CV-3976, 2022 WL 1133010, at *1 (2d Cir. Apr. 18, 2022) (first citing

*Anderson*, 477 U.S. at 248; and then citing *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127,

129 (2d Cir. 2013)).

 **b. Defendants willfully violated 28 U.S.C. § 5314**

  The government argues that the evidence supports a conclusion that Defendants willfully

failed to file an FBAR[4] because recklessness is sufficient to establish willfulness and the

undisputed evidence shows that Defendants acted recklessly.[5]  (Gov't Mem. 1–2, 16–18).  In

support, the government argues that the "evidence amassed to date establishes that the

Defendants' conduct is consistent with, and exceeds, the indicia of recklessness established in

the FBAR case law," because: (1) Defendants submitted federal income tax returns that falsely

stated they had no foreign financial accounts during the relevant tax years; (2) they failed to ask

their accountant about their responsibilities as to the Lloyds Account; (3) they understood that

interest income from a domestic bank is taxable under U.S. law; (4) they instructed the foreign

bank to hold mail related to the Lloyds Account and not invest in U.S. securities; (5) the Lloyds

Account was a significant percentage of their net worth during the years at issue; and

---

 [4] Defendants do not dispute that they improperly failed to timely file FBARs for tax years 2010 to 2012. (Defs.' Mem. 2.)  The parties dispute only whether Defendants' failure to file FBARs was willful. (Gov't Mem. 1; Defs.' Mem. 2.)

 [5] The government also argues that Defendant's affirmative defenses lack merit. (Gov't Mem. 20–21.)  Defendants asserted the following affirmative defenses in their Answer: (1) failure to state a claim upon which relief can be granted; (2) a failure to show "willfulness or other requisite state of mind"; (3) "mistake"; (4) that the government's claims are barred by the statue of limitations; (5) "waiver, equitable estoppel, or laches"; (6) "recoupment or set off"; and (7) "any other matter constituting avoidance or affirmative defense." (Answer 4.)  Because Defendants do not argue that any of these affirmative defenses bar summary judgment in favor of the government, the Court declines to consider them. *See, e.g., Arbitron Inc. v. Tralyn Broadcasting, Inc.*, 526 F. Supp. 2d 441, 447 (S.D.N.Y. 2007) ("A defendant is required to plead and adequately develop an affirmative defense during pretrial proceedings so that a district court can determine which claims, if any, may be disposed of by summary judgment." (citing *Kerman v. City of New York*, 374 F.3d 93, 111–12 (2d Cir. 2004)).

(6) Defendants are sophisticated taxpayers, part-owners in real-estate ventures, and individuals surrounded by professionals who "were in positions to either advise them about the implications of the foreign account, or at the very least point them in [the] right direction." (Gov't Mem. 1–2, 16–18).

Defendants argue that 31 U.S.C. § 5321(a)(5) requires a showing that they intentionally violated the FBAR requirement and that there is a genuine dispute of fact as to whether they did so, because they did not review or sign their tax returns and they believed that they did not have to report the Lloyds Account. (Defs.' Mem. 2–5; Defs.' 56.1 ¶ 32.)

Under 31 U.S.C. § 5314, "a United States person with an interest in foreign financial accounts having an aggregate value of more than $10,000 is required each year to file an FBAR." *United States v. Kahn*, 5 F.4th 167, 169 (2d Cir. 2021) (citing 31 U.S.C. § 5314; 31 C.F.R. § 1010.350(a); 31 C.F.R. § 1010.306(c)). The government may collect civil penalties where an individual "violates, or causes any violation of, any provision of section 5314," 31 U.S.C. § 5321(a)(5)(A), and "[i]n the case of any person willfully violating, or willfully causing any violation of, any provision of section 5314," the government may collect civil penalties up to the greater of (1) $100,000, or (2) 50% of the balance in the unreported foreign account at the time of the violation, *id.* § 5321(a)(5)(C)–(D). *See also Kahn*, 5 F.4th at 170 (noting that "for willful behavior," the maximum civil penalty "for failure to file an FBAR [is] the greater of $100,000 or 50 percent of the aggregate balance in the accounts at the time of the violation." (additional citation omitted) (citing 31 U.S.C. § 5321(a)(5)(C)(i))); *United States v. Mrvic*, 652 F. Supp. 3d 409, 411 (S.D.N.Y. 2023) ("United States citizens must file with the IRS [an FBAR] if they have an interest in a foreign bank or other financial account, and civil penalties attach for failure to abide by the FBAR reporting requirements." (citations omitted)); *Zuhovitzky v. UBS AG CHE*

9

*101.329.562*, No. 21-CV-11124, 2023 WL 4584452, at *9 (S.D.N.Y. July 18, 2023) ("[I]f a U.S.

citizen 'willfully violat[es]' or 'willfully caus[es] a violation,' the penalty [for violating FBAR

disclosure requirements] increases to either $100,000 or 50% of the amount in the assets in the

unreported account at the time of the violation, whichever is higher." (second and third

alterations in original) (quoting 31 U.S.C. § 5321(a)(5)(C)–(D))). "To be found liable for a

willful violation under 31 U.S.C. § 5321(a)(5), the United States must prove by a preponderance

of the evidence that (1) [Defendants are] United States citizen[s]; (2) [Defendants] had an

interest in, or authority over a foreign financial account; (3) the account had a balance exceeding

$10,000.00 at some point during the reporting period; and (4) [Defendants] willfully failed to

disclose the account and file [FBARs]." *United States v. Schik*, No. 20-CV-2211, 2022 WL

685415, at *4 (S.D.N.Y. Mar. 8, 2022).

Although the Second Circuit has not yet addressed the meaning of "willful" in the

context of Section 5321(a)(5), the Supreme Court has stated that "where willfulness is a statutory

condition of civil liability," it will generally be construed to include "not only knowing

violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47,

57 (2007) (collecting cases). The Second Circuit has also held that, for the purposes of 26

U.S.C. § 6672, which provides penalties for willful failure to collect and pay withholding tax, an

"individual's bad purpose or evil motive in failing to collect and pay the taxes 'properly play[s]

no part in the civil definition of willfulness.'" *Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir.

1997) (alteration in the original) (quoting *Hochstein v. United States*, 900 F.2d 543, 548 (2d Cir.

1990)). Other courts in this Circuit have thus concluded that willfulness for purposes of Section

5321(a)(5) includes both knowing and reckless violations. *See United States v. Katholos*, No.

17-CV-531, 2022 WL 3328223, at *8 (W.D.N.Y. Aug. 10, 2022) ("[W]illfulness includes

10

recklessness."); *Schik*, 2022 WL 685415, at *5 ("The Court agrees with the decisions of almost

every court, including those in this Circuit, that have considered the issue and now holds that a

'willful violation' includes reckless violations for purposes of a civil FBAR penalty."); *United

States v. Gentges*, 531 F. Supp. 3d 731, 743 (S.D.N.Y. 2021) ("[F]or purposes of the civil

penalties provision in [Section] 5321(a)(5)(C)(i), a willful violation of the FBAR reporting

requirement includes both knowing and reckless violations of the statute."); *United States v.

Bernstein*, 486 F. Supp. 3d 639, 647 (E.D.N.Y. 2020) (noting that in the context of a failure to

file an FBAR, "recklessness is a subset of, or an alternative to, willfulness" (citing *Safeco Ins.*,

551 U.S. at 57)).

     Other circuit courts have similarly concluded that "willfulness" for the purpose of Section

5321 includes reckless violations. *See, e.g., United States v. Rum*, 995 F.3d 882, 889 (11th Cir.

2021) ("[W]illfulness in [Section] 5321 includes reckless disregard of a known or obvious

risk."); *United States v. Horowitz*, 978 F.3d 80, 88 (4th Cir. 2020) ("[F]or the purpose of

applying § 5321(a)(5)'s civil penalty, a 'willful violation' of the FBAR reporting requirement

includes both knowing and reckless violations[.]"); *Norman v. United States*, 942 F.3d 1111,

1115 (Fed. Cir. 2019) ("[W]illfulness in the context of § 5321(a)(5)(C) includes recklessness.");

*Bedrosian v. United States*, 912 F.3d 144, 152 (3d Cir. 2018) ("*Bedrosian I*") (concluding that in

the context of failing to file an FBAR, "willfulness" covers "not only knowing violations of a

standard, but reckless ones as well" (internal quotation omitted)).  Consistent with all the courts

that have considered this issue, the Court finds that a showing that Defendants recklessly failed

to fail FBARs would result in civil penalties under Section 5321(a)(5)(C).

     In the civil context, recklessness "encompasses an objective standard — specifically, 'the

civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act

in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Gentges*, 531 F. Supp. 3d at 744 (quoting *Horowitz*, 978 F.3d at 89); *Katholos*, 2022 WL 3328223, at *8 (same). In the context of Section 5321, "willfulness is established if 'the defendant (1) clearly ought to have known that (2) there was a grave risk that an accurate FBAR was not being filed and if (3) he was in a position to find out for certain very easily.'" *Katholos*, 2022 WL 3328223, at *8 (quoting *Horowitz*, 978 F.3d at 89).

Construing the evidence in Defendants' favor, Defendants "entrusted the preparation and filing of their tax returns to their long-time accountant and did not review the tax returns or sign them prior to filing." (Defs.' 56.1 ¶ 32.)[6] Defendants argue that this demonstrates that their failure to file an FBAR was not willful. (Defs.' Mem. 3.) However, "most courts have held that where . . . a defendant provides false information regarding foreign bank accounts by failing to review carefully his income tax return, that defendant has shown reckless disregard toward, and thus has willfully violated, the FBAR reporting obligation." *Gentges*, 531 F. Supp. 3d at 745–46 (collecting cases) (concluding that the defendant's admission that he filed his income tax return "without any significant substantive review . . . doom[ed] [his] argument on summary judgment"); *see also Kimble v. United States*, 991 F.3d 1238, 1242–43 (Fed. Cir. 2021) (concluding that the grant of summary judgment to the government was not clear error because

---

[6] (*See also* Gov't Ex. C, Dep. of Juan Reyes 165:5  16 (answering, in response to the question of whether Defendants' accountant sent the 2010 tax return to their house for Defendants to review and sign that "I think . . . because we['d] been doing that for 40 years . . . he probably trust[ed] us and we trust[ed] him" and stating that Defendants "[p]robably" reviewed and confirmed the accuracy of the original 2010 return prior to signing it), 176:16–19 (stating that the process for preparing the 2011 tax return was the same as for the 2010 tax return), 188:24–189:16 (same for 2012 tax return), Docket Entry 22-9; Gov't Ex. D, Dep. of Catherine Reyes 30:2  21 (stating that she did not review and confirm the accuracy of the income tax returns for 2010, 2011, or 2012 before faxing them back to Defendants' accountant), 37:89 (stating that if Defendants' accountant "sent it to me I signed it"), Docket Entry 22-10.)

the undisputed facts showed a willful violation where, among other things, the defendant did not review her tax returns before signing and filing them, and the tax returns stated that she had no foreign accounts); *Horowitz*, 978 F.3d at 90 (concluding that defendants acted recklessly in part because they "repeatedly failed to review the[ir] returns with the care sufficient at least to discover their misrepresentation of foreign bank accounts, while nonetheless stating that the returns were accurate" and that "such recklessness was only heightened by the fact that they understood that the tax returns represented only the information that they had provided to the[ir] accountant").[7] Defendants' failure to meaningfully review their tax returns before filing returns that inaccurately represented that they had no foreign accounts thus shows that they "recklessly disregarded the FBAR reporting obligation." *Gentges*, 531 F. Supp. 3d at 750.

In addition, the undisputed facts show other indicia of recklessness. First, Defendants never asked their "long-time accountant" to whom they "entrusted the preparation and filing of their tax returns" whether they were required to report their foreign account, nor did they inform him that the foreign account existed, despite his attempt to collect that information via his "client

---

[7] The lack of a physical signature on Defendants' tax returns for the years in question does not establish a genuine dispute of material fact. Defendants point to the fact that they did not physically sign the tax returns to support their argument that they did not review the tax returns before filing, not as evidence that they did not provide authorization for their accountant to file the returns. (*See* Defs.' Mem. 3 (identifying the "core fact at issue" as "[D]efendants' state of mind as to the requirement that they disclose a foreign bank account" and objecting to the government's "reliance upon [Defendants'] unsigned income tax returns as verified fact to establish their state of mind").) Defendants do not dispute that they authorized the filing of their tax returns.

Regardless, courts have held that an electronic signature in the form of a Personal Identification Number ("PIN") such as the one on Defendants' tax returns may suffice to serve as a taxpayer's signature. *See, e.g., United States v. Lawrence*, 557 F. App'x 520, 530 (6th Cir. 2014) (concluding that because, among other things, the defendant did "not dispute that his PIN [was] on th[e] [tax] returns or that he authorized [his accountant] to e-file his returns," his PIN provided a sufficient basis for a jury to conclude that he had "subscribed" his name to the tax returns for purposes of his violation of 26 U.S.C. § 7206(1)).

organizer" questionnaires. (Defs.' 56.1 ¶ 32; Gov't 56.1 ¶¶ 24–25, 27, 35); *see, e.g., Gentges*, 531 F. Supp. 3d at 750–51 (noting that "courts have repeatedly held" that where a defendant does not disclose the existence of his foreign accounts or seek advice from his tax preparer regarding the accounts, "such an omission constitutes evidence of recklessness or willful blindness toward the FBAR reporting obligation"); *Horowitz*, 978 F.3d at 90 (affirming the grant of summary judgment in favor of the government where, among other things, the defendants failed to ask their accountant about their reporting requirements for their foreign account); *Kimble*, 991 F.3d at 1242–43 (concluding that the grant of summary judgment to the government was not clear error because the undisputed facts showed a willful violation where, among other things, the defendant "knew about the numbered account and took efforts to keep it secret by . . . not disclosing the account to her accountant"). Defendants point to the fact that they relied on a news article in a Nicaraguan newspaper and informal conversations with "international lawyers" outside of the United States for their understanding that they did not have to report their foreign account, but "a defendant's subjective belief does not negate a finding of recklessness or willful blindness, particularly where, as here, a defendant could easily have determined whether his belief was accurate by speaking with a longtime tax preparer." *Gentges*, 531 F. Supp. 3d at 750; *see also Horowitz*, 978 F.3d at 89 ("[The defendants'] only explanation for not disclosing foreign interest income related to some unspecified conversations they had with friends in Saudi Arabia in the late 1980s. Yet, if the question of whether they had to pay taxes on foreign interest income was significant enough to discuss with their friends, they were reckless in failing to discuss the same question with their accountant at any point over the next 20 years.").

Second, although Defendants assert that they "do not recall ever having requested that Lloyds Bank keep mail related to their account," it is undisputed that they paid a fee to the

Lloyds Account for a "keep mail" service, under which the bank retained all account-related correspondence, rather than sending it to Defendants at their designated address in the United States. (Defs.' 56.1 ¶ 14; Gov't 56.1 ¶ 14.) Defendants also do not dispute that they signed documents directing the bank to sell all of their U.S. securities and not invest in further U.S. securities.[8] (Gov't 56.1 ¶ 17; Defs.' 56.1 ¶ 17; Gov't Ex. K); *see also Gentges*, 531 F. Supp. 3d at 751 ("Also significant is the fact that both of [d]efendant's foreign accounts were set up as numbered accounts with 'hold mail' service."); *Horowitz*, 978 F.3d at 90 (noting the defendants' use of the "hold mail" service for their foreign account); *Bedrosian v. United States*, 42 F.4th 174, 180 (3d Cir. 2022) ("*Bedrosian II*") (noting that the defendant's foreign accounts were subject to a "mail hold" and that the undisputed facts of "the existence of the mail hold or that he signed a form and paid a fee to the bank for this benefit" were relevant to the question of whether he had willfully violated the FBAR reporting requirement); *Norman*, 942 F.3d at 1116 (concluding that, among other things, the defendant's signing of a "document preventing [her bank] from investing in U.S. securities on her behalf" was a step that "had the effect of inhibiting disclosure of the account to the IRS").

Finally, it is also undisputed that the balance of the Lloyds Account represented between 75% and 90% of Defendants' wealth during the years in question. (Gov't 56.1 ¶ 16; Defs.' 56.1 ¶ 16); *see Gentges*, 531 F. Supp. 3d at 752 (noting that the size of the accounts in question "were by no means small or insignificant and thus susceptible to being overlooked by" the defendant (quoting *Horowitz*, 978 F.3d at 90)); *Bedrosian II*, 42 F.4th at 180 (noting that the defendant had

---

[8] Defendants dispute only their intent in signing the form, asserting that the form "does not explicitly state that [Defendants] requested this for the purpose of avoiding U.S. income tax withholdings." (Defs.' 56.1 ¶ 17.)

"also acknowledged that he was aware of the significant amount of money held in his foreign bank accounts").

Defendants' undisputed failure to review their incorrect tax returns in advance of the filing of the returns, as well as the additional undisputed evidence, demonstrate that they acted, at a minimum, recklessly when they failed to file FBARs in 2010, 2011 and 2012, and they are therefore subject to enhanced penalties for a willful violation under 31 U.S.C. § 5321(a)(5)(C). Accordingly, the Court grants the government's motion for summary judgment.

### c. Penalty

Under 31 U.S.C. § 5321(a)(5)(C)(i), as a result of a willful violation of the FBAR filing requirement, a defendant can be subject to a maximum civil penalty of "the greater of $100,000, or 50 percent of" the balance of the account at the time of the violation. *See Kahn*, 5 F.4th at 170 (noting that "for willful behavior," the maximum civil penalty "for failure to file an FBAR [is] the greater of $100,000 or 50% of the aggregate balance in the accounts at the time of the violation." (citing 31 U.S.C. § 5321(a)(5)(C)(i))). The Internal Revenue Manual ("Manual") states that the "violation date" for FBAR violations in calendar years 2015 and earlier occurs on "June 30th of the year following the calendar year for which accounts must be reported." Manual § 4.26.16.5.2(2); *see also Gentges*, 531 F. Supp. 3d at 752 ("Under the Internal Revenue Manual, '[t]he date of a violation for failure to timely file an FBAR is the end of the day on June 30th of the year following the calendar year for which the accounts are being reported[,]' and thus, '[t]he balance in the account at the close of June 30th is the amount to use in calculating the filing violation.'" (alterations in original) (quoting Manual § 4.26.16.6.5)).

The government asserts, and Defendants do not dispute, that each Defendant is subject to a penalty of $420,051,[9] and that the unpaid balance for each Defendant as of February 21, 2023, including failure to pay penalties, interest, and other statutory accruals under 31 U.S.C. § 3717, is $518,170.30.[10]  (Gov't 56.1 ¶¶ 55  56; Defs.' 56.1 ¶¶ 45–46; Cox Decl. ¶¶ 4–5.)  Because Defendants do not challenge the government's assessment, and there is nothing in the record to suggest that the government failed to calculate the penalties in line with its own internal guidelines, or inappropriately exercised its discretion in reducing the maximum penalties, there is no basis to conclude that the penalties are arbitrary or capricious.  The Court therefore grants the government's summary judgment motion as to the penalties assessed against each Defendant.

---

[9]  Defendants do not dispute that on the violation date for the 2010 FBAR reporting violations, the Lloyds Account had a balance of $2,113,813; for the 2011 FBAR reporting violations, the Lloyds Account had a balance of $2,064,258; and for the 2012 FBAR reporting violation, the Lloyds Account had a balance of $2,101,330.  (Gov't 56.1 ¶ 49; Defs.' 56.1 ¶ 48–56.)  Multiplying each of these amounts by 50%, the maximum penalty is $1,056,907 for the 2010 violation; $1,032,129 for the 2011 violation; and $1,050,665 for the 2012 violation.  (Gov't Ex. DD 17, Docket Entry No. 22-36; Gov't Ex. EE 17, Docket Entry No. 22-37.)  As a result, the government determined that the maximum penalty under § 5321(a)(5)(C)(i) was $3,139,701 for each Defendant.  (Gov't. 56.1 ¶ 50.)

The government, in its discretion, determined that the maximum penalty was "too severe," and instead determined that for each Defendant the appropriate penalty would be $175,022 for the 2010 violation; $175,022 for the 2011 violation; and $175,021 for the 2012 violation.  (Gov't Ex. DD 6; Gov't Ex. EE 6.)  These amounts were reached by taking 50% of the account balance as of June 30, 2012, the violation date for the 2011 violation, and then further reducing that balance by 50% to represent each Defendant's 50% ownership of the account, resulting in a total penalty of $516,065, which the government then spread evenly over the 2010 through 2012 tax years.  (Gov't Ex. DD 6; Gov't Ex. EE 6; Gov't 56.1 ¶ 50.)  The government then reduced the penalties by an additional 20% each after Defendants submitted a formal protest, resulting in final penalties for each Defendant's willful FBAR reporting violation of $140,017 for 2010; $140,017 for 2011; and $140,017 for 2012.  (Gov't 56.1 ¶ 51; Gov't Ex. FF, Docket Entry No. 22-38; Gov't Ex. GG, Docket Entry No. 22-39.)  The total penalty for each Defendant was therefore calculated to be $420,051.  (Cox Decl. ¶¶ 4–5, Docket Entry No. 22-3.)

[10]  The government asserts that each balance of $518,170.30 includes $420,051 due from the FBAR penalty, $14,017.04 due in interest, and $84,102.26 due as a late-payment penalty under 31 U.S.C. § 3717(e)(2).  (Cox Decl. ¶¶ 4–5.)

*See Gentges*, 531 F. Supp. 3d at 752 (noting that IRS penalty calculations are reviewed "for abuse of discretion under the 'arbitrary and capricious' standard of the Administrative Procedure Act," and granting summary judgment with respect to the penalty calculation for a bank account for which the defendant did not dispute the penalty calculation); *Rum*, 995 F.3d at 895 (concluding that because the IRS's actions in determining the defendant's FBAR penalty were not improper, they were not arbitrary and capricious).

### III. Conclusion

For the reasons stated above, the Court grants the government's motion for summary judgment.

Dated: January 10, 2024
        Brooklyn, New York

                                SO ORDERED:


                                _____ s/ MKB _____
                                MARGO K. BRODIE
                                United States District Judge